UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEVEN MALCOLM,<br><br>                  Plaintiff(s),<br><br>    v.<br><br>ACRYLIC TANK MANUFACTURING, INC., et al,<br><br>                  Defendant(s). | Case No. 2:17-CV-1108 JCM (PAL)<br><br>ORDER |

Presently before the court is third-party defendant Reynolds Polymer Technology, Inc.'s ("Reynolds") motion to dismiss defendant/third-party plaintiff Acrylic Tank Manufacturing, Inc.'s ("ATM") third-party complaint. (ECF No. 46). Reynolds subsequently filed an amended motion to dismiss ATM's third-party complaint. (ECF No. 47). ATM responded to both motions to dismiss (ECF No. 49), and Reynolds replied (ECF No. 50).

**I.  Facts**

This action arises from a 2007 contract between plaintiff Steven Malcolm ("Malcolm") and ATM. (ECF No. 1). ATM agreed to build and install a state-of-the-art, three-story marine aquarium in Malcolm's Scotland residence. *Id*. On November 30, 2015, the aquarium collapsed. *Id*. 25,000 gallons of salt water and live fish spread across the residence, causing damage to Malcom's home and the contents therein. *Id*.

ATM did not build the aquarium alone. ATM retained Reynolds, which is incorporated and has its principal place of business in Colorado, to build a cylindrical tank three-and-one-half (3.5) meters in diameter and ten (10) meters in height. (ECF No. 22). Reynolds manufactured the acrylic cylinder and shipped it from its factory in Grand Junction, Colorado, directly to Scotland.

**James C. Mahan**
**U.S. District Judge**

*Id*. In or around March 2010, ATM installed the aquarium in Scotland without Reynolds' participation. (ECF Nos. 1, 22).

On April 21, 2017, Malcolm filed this action, naming ATM and Reynolds as defendants. (ECF No. 1). On July 6, 2017, this court dismissed Malcolm's causes of action against Reynolds for lack of personal jurisdiction. (ECF No. 22). On November 14, 2017, ATM filed a third-party complaint against Reynolds. (ECF No. 33). The third-party complaint alleges nine causes of action: (1) contractual implied indemnity, (2) equitable implied indemnity, (3) express indemnity, (4) contribution, (5) breach of express warranty, (6) breach of implied warranty, (7) declaratory relief, (8) breach of contract, and (9) negligence. *Id*.

Now, Reynolds moves to dismiss the third-party complaint on the grounds that the court does not have personal jurisdiction. (ECF Nos. 46, 47).

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a *prima facie* case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

An assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where a defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414–16). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted). In other words, defendant's affiliations with the forum state must be so "continuous and systematic" as to render it essentially "at home" in that forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (citations omitted).

**III. Discussion**

*a. General jurisdiction.*

The court does not have general jurisdiction because Reynolds is not "at home" in Nevada. *See Daimler*, 571 U.S. at 137 (describing the general jurisdiction analysis for corporations).

James C. Mahan
U.S. District Judge

- 3 -

For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id*. (citation omitted). A corporation may also be subject to general jurisdiction in a forum where it has engaged in "substantial, continuous, and systematic courses of business" so as to render it "at home" in that forum. *Id*. at 137–38.

This court has previously held that Reynolds is not subject to general jurisdiction in Nevada. (ECF No. 22). A review of the underlying facts confirms that this court did not err. Reynolds is incorporated and has its principal place of business in Colorado. (ECF Nos. 1, 6). Further, Reynolds' contact with Nevada is not so continuous or systematic so as to render Reynolds at home. The vast majority of Reynolds' contact with this forum consists of sporadic commercial transactions and occasional business-related visits. (ECF Nos. 47, 49). Further, ATM has not shown any activities that amount to a continuous or systematic presence in Nevada. Reynolds does not have any offices, employees, or agents in Nevada. (ECF No. 47). Reynolds does not even advertise or engage in promotional events in Nevada. *Id*. Reynolds' connection to this forum can be summed up as brief and limited interactions that bring no assurance of continuing presence in this forum. Accordingly, the court does not have general jurisdiction over Reynolds.

### b. *Specific jurisdiction*

ATM's last resort to avoid dismissal under rule 12(b)(2) is to demonstrate that its allegations establish a *prima facie* case for specific jurisdiction. *See Boschetto*, 539 F.3d at 1015. To establish a *prima facie* case, ATM must satisfy the first two prongs of the test for specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 802.

#### A. *Purposeful availment*

The Ninth Circuit treats purposeful availment and purposeful direction as separate methods of analysis. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort. *Schwarzenegger*, 374. F.3d at 802 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

To meet the first two prongs of the purposeful availment analysis for specific jurisdiction, a plaintiff must show that defendant purposefully availed himself of the privilege of conducting

activities within the forum state and that those acts of purposeful availment give rise to plaintiff's claims. *Schwarzenegger*, 374 F.3d at 802. To determine this, the court will look at: "actions by the defendant *himself* that create a 'substantial connection' with the forum state," "affirmative conduct which allows or promotes the transaction of business within the forum state," and "prior negotiations and contemplated future consequences, terms of the contract and the parties' actual course of dealing." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

This court has previously held that Reynolds is not subject to specific jurisdiction in Nevada. (ECF No. 22). A review of ATM's response has not persuaded the court to depart from its original holding.

ATM argues Reynolds would occasionally visit ATM's office in Nevada for the purpose of soliciting business. (ECF No. 49). ATM continues that this solicitation eventually caused ATM to retain Reynolds to manufacture the cylindrical tank. *Id*. Reynolds claims that it was ATM that reached out first. (ECF No. 50). The parties do not dispute that Reynolds would occasionally travel to Nevada in order to solicit business. *See* (ECF Nos. 47, 49, 50). However, neither party has explained how the agreement between Reynolds and ATM came about.

What is most troubling is that ATM does not allege specific details that explain how the parties entered into an agreement, which would at least convey how the agreement arose from Reynolds' contacts with Nevada. In other words, ATM has alleged nothing more than bare allegations that Reynolds sought to be the supplier for the Scotland project. (ECF No. 49). These omissions are inexcusable because ATM was directly dealing with Reynolds and, therefore, has the ability to disclose the details relating to formation of the unwritten agreement.

Accordingly, ATM has failed to make a *prima facie* showing that Reynolds' contacts in Nevada give rise to Malcolm's claim.

### B. Reasonableness

Even if the court were to find that ATM has satisfied the first two prongs for exercising specific jurisdiction, such jurisdiction would be unfair and unreasonable.

To determine if the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the court considers the following seven factors:

> (1) the extent of the [defendant's] purposeful injection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendant's state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). "No one factor is dispositive; a court must balance all seven." *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987)). However, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114.

States have a "manifest interest in providing effective means of redress for [their] residents." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Further, "[a] choice of law provision may reinforce a defendant's 'deliberate affiliation with the forum State and the foreseeability of possible litigation there.'" *Parasoft Corp. v. Parasoft S.A.*, No. CV 14-9166-DMG (PLAx), 2015 WL 12645754, at *3 (C.D. Cal. Feb. 9, 2015) (quoting *Elec. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1353 (Fed. Cir. 2003)).

"[The most efficient judicial resolution] factor focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d at 1323 (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

*L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)). The fifth factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id.*

Here, the first two factors suggest that exercising jurisdiction over Reynolds would be unfair. Reynolds' performance of the agreement occurred entirely in Colorado, as Reynolds has its principal place of business in Colorado. Further, litigating in Nevada, where Reynolds does not have a single employee or agent, would unduly burden Reynolds into traveling to a different state to litigate an issue that occurred almost entirely in Scotland and Colorado.

The fifth and seventh factors also weigh against exercising specific jurisdiction. The Colorado courts, which the court recognizes as an adequate alternative forum, would be more efficient for litigation. The events that give rise to this action substantially occurred in Colorado and Scotland, making it easier for Colorado courts to access the pertinent evidence necessary to resolve this issue—Reynolds' manufacturing facility and employees are located in Colorado.

The fourth and sixth factors weigh in favor of exercising specific jurisdiction. Nevada courts have an interest in adjudicating issues that concern its own residents. ATM, as a Nevada resident, would also find courts in Nevada a more convenient place to litigate especially since Malcolm has already initiated suit in this forum.

In balancing the factors, although some weigh in favor of exercising specific jurisdiction, the court holds that ATM "failed to present a compelling case that the . . . exercise of jurisdiction in [Nevada] would be unreasonable." *See Panavision*, 141 F.3d at 1324.

### III. Summary

In sum, the court holds that it does not have personal jurisdiction over Reynolds. The court does not have general jurisdiction because Reynolds is not at home in Nevada. Further, the court does not have specific jurisdiction because ATM has not made a *prima facie* showing of purposeful availment and the exercise of specific jurisdiction would be unreasonable. Accordingly, the court will grant Reynolds' motion to dismiss for lack of personal jurisdiction.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Reynolds' amended motion to dismiss ATM's third-party complaint (ECF No. 47) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Reynolds' motion to dismiss (ECF No. 46) be, and the same hereby is, DENIED as moot.

DATED August 21, 2018.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**